FARGUSON *et al. v.* JOHNSTON *et al.*

(*District Court, N. D. Mississippi.* June Term, 1888.)

FRAUDULENT CONVEYANCES — MORTGAGE DEED ABSOLUTE — WITHHOLDING AGREEMENT TO RECONVEY FROM RECORD.
A deed to land, absolute on its face, duly acknowledged and recorded, for the consideration of $2,000 in cash paid, expressed in the deed, when it was really a security for a past indebtedness of $400, and future advances, in all to the amount of $2,000, and the grantee at the same time gave to the grantor his obligation to reconvey the land upon the payment of the amount, with the understanding that the obligation to reconvey was not to be recorded or made known for the purpose of preventing injury to the credit of the grantor, and to prevent his property from being attached, *held* fraudulent and void as to the then existing creditors of the grantor.

(*Syllabus by the Court.*)

In Equity. Hearing on pleadings and proofs.
E. Mayes, for complainant.
Sullivan & Whitfield, for defendants.

HILL, J. This cause is submitted upon bill, amended bill, answers, exhibits, and proofs, from which the following facts appear: Complainants were commission merchants, in the city of Memphis, Tenn.; and

defendant H. M. Johnston was a country merchant, doing a small retail business in the town of Courtland, Miss., in the early part of 1885, and was indebted to complainants for advances theretofore made in the sum of four to five hundred dollars, and applied to complainants for further advances to enable him to continue his business for that year, which complainants declined to furnish unless secured, when, after negotiations had commenced between them, it was agreed that Johnston should, to secure the payment of that already due, and for further advances to be made, execute to said Farguson a deed in fee-simple, absolute on its face, to the tract of land described in the bill, and to receive from said Farguson his obligation to reconvey the land to Johnston upon the payment of the amount that might thereafter remain due, upon six-months' notice of a demand of payment. The business was done, and the transactions were had, by Johnston under the name and style of H. M. Johnston & Co., though he was the only party interested. To carry out this agreement, Johnston and his wife, Emma O. Johnston, on the 10th day of March, 1885, or bearing that date, executed a deed of conveyance to said land to said Farguson for the expressed consideration of $2,000 cash in hand then paid, which deed was acknowledged on the 14th day of the same month, and filed for record in the proper office on the 16th of March, 1885. From a letter bearing date the 5th of March, 1885, written by Johnston to complainants, and received by them, as appears from a letter written by complainants bearing date March 7th, the deed and note were inclosed by Johnston at Courtland, Miss., to complainants in Memphis. How the deed was sent before the date of its execution is not explained. To carry out the arrangement, H. M. Johnston, in the name and style of H. M. Johnston & Co., signed and sent or delivered to complainants his note, which is as follows:

"COURTLAND, MISS., Feby. 19th, 1885.

"On 1st Jan., 1886, we promise to pay to J. T. Farguson & Co. two thousand dollars, for value received, bearing interest at ten per cent. per annum from maturity, and payable at their office in Memphis, Tenn.

[Signed] "H. M. JOHNSTON & Co."

The presumption is that the note was written on the day it bears date; but at what particular time it was signed and delivered, does not satisfactorily appear. In further carrying out the agreement entered into, said Farguson executed and delivered to H. M. Johnston the written agreement as follows:

"MEMPHIS, TENN., March 28, '86.

"H. M. Johnston, and wife, Emma O. Johnston, conveyed to me by deed dated March 10, 1885, the north-east quarter of section nine, township ten, range seven, in the Second court district of Panola county, Miss., for the stated consideration of two thousand dollars. This deed was made to secure the firm of J. T. Farguson & Co., of Memphis, Tenn., in any amounts that are now or may hereafter be due the said firm of T. J. Farguson & Co. by H. M. Johnston, or by H. M. Johnston & Co.; and I now agree and bind myself to reconvey to said H. M. Johnston, and his wife, Emma O. Johnston, the above-described lands whenever requested by them to do so, provided all of the indebtedness of the said H. M. Johnston & Co. has been paid, with in-

terest accrued; and provided said indebtedness is paid within six months after demand has been made upon them to make such payments by said J. T. Farguson & Co. I only agree to convey by quitclaim deed.

    [Signed]                                        "JNO. T. FARGUSON."

    This paper or defeasance was not acknowledged or recorded, and it was understood by both parties that it would not be made public, and for the reason that, if known, it might affect the credit of Johnston, and might cause his property to be attached. It appears from the account exhibited by complainants with their bill, that Johnston was, on the 9th day of March, 1885, credited with the amount of the note, $2,000, and charged with the discount thereon, $131.56; and that the business was continued until the 16th of January, 1886. The last item seems to have been advanced by complainants, and the last credit appears to have been given, on August 14, 1886, when the account was balanced, and a credit for $386.63 was entered upon the note for $2,000. About the 1st of February, 1886, as it seems from the correspondence, some propositions passed between the parties relative to a settlement of the indebtedness by a surrender of the land, which was not consummated; when, on the 4th day of February, 1886, complainants served a written notice on Johnston, demanding the payment of the amount due them on or before the 10th day of August thereafter, or that possession of the land should then be surrendered to them. On the 5th day of February, 1886, Hill, Standish & Co. sued out their writ of attachment in the circuit court of Panola county, in this state, against said H. M. Johnston, or H. M. Johnston & Co., and on the next day caused the same to be levied upon the interest which said Johnston had in the lands described in the bill, which cause was removed to this court, and upon which judgment was rendered against said Johnston in favor of plaintiffs on the 9th day of June, 1886, for the sum of $1,150.50, and an execution was issued upon the same, and a sale thereof made by the marshal of this court on the —— day of ——, when the same was struck off to W. V. Sullivan at the sum of $25, and a deed made by the marshal, conveying to him all the title to said land held by said Johnston, who holds the same for Hill, Standish & Co. On the 16th day of January, 1886, Merderson & Co. sued out their writ of attachment in this court against said H. M. Johnston, and on the 13th day of February, 1886, caused the same to be levied upon the interest which said Johnston had in and to the land described in the bill, and on the 9th day of June, 1886, obtained judgment in said suit against said Johnston for the sum of $776.22, and upon which a *venditioni exponas* was issued and executed by the marshal, when the interest of Johnston so levied upon was sold and struck off to W. V. Sullivan, and a deed made to him; he holding the same as trustee for the plaintiffs in said suit. Sullivan is made a defendant to the cross-bill, and represents the interest of his clients in both of said attachment suits. These are all the facts that need be stated to an understanding of the questions to be decided.

    There is no dispute as to the character and purpose of the deed and defeasance. It was intended to operate as a security for the payment

of the amount then due by Johnston to complainants, and advances thereafter to be made during that year, not to exceed $2,000, and, as between the parties themselves, was a valid and binding contract. The execution of the note, its discount, etc., was only a form of keeping their accounts, and is not approved by the courts, and especially by the supreme court of this state, by whom it has been characterized as a trick of book-keeping. The transaction will be considered, as between the parties, as it really was intended to be, and the note be will disregarded, further than it provided a limit to the amount to be secured. The indebtedness is only the amount due upon the account, with interest. It is clear that this contract was intended to be executed in Memphis, Tenn., and I am of opinion that, under the proof, only 6 per cent. can be allowed upon the balance of said indebtedness; the note being disregarded only as to the limit of the amount intended to be secured. If the note was held to be the indebtedness, instead of the balance due on the account, then there would be some trouble in determining whether or not the note bearing 10 per cent. interest could be allowed 6 per cent., or relief denied altogether. It is well settled that, in the absence of a valid contract to pay, a different rate of interest—the rate at the place of performance—must govern; but it is also settled that the parties may contract in writing for the rate of interest allowed by law in the place where the contract is made. Ten per cent. per annum may be contracted, in writing, in this state, to be paid for the loan of money or forbearance in payment. In Tennessee, where usurious interest is embraced in a written contract, and it appears on the face of it, and the party claiming it goes into a court of law or equity to enforce the payment, the court refuses a judgment or decree for any part of the debt claimed; but, unless the usurious interest appears upon the face of the obligation, and it is established by proof *aliunde*, then the amount due, with legal interest, is allowed. The proof in this case leaves it uncertain where the note was actually executed; so that, in any point of view, I cannot agree with counsel for the defense that no relief can be given on account of usury.

This brings us to the question as to whether or not the execution of the deed and defeasance, with the understanding that the defeasance was not to be put on record, but to be kept secret, to prevent injury to the credit of Johnston, and to prevent the liability of his property to attachments on behalf of his creditors, rendered the same void, and the land liable to the debts of the judgment creditors, under which Sullivan claims title to these lands, or, rather, to the debts of these creditors, as it is admitted that Sullivan holds only as trustee for them, and, if liable, is the liability to that portion of the indebtedness accrued before, or both after and before, its execution. It is clear that, if the account of the transaction given by Johnston in his testimony is correct, then the transaction was fraudulent and void as to the existing creditors of Johnston; being designed to hinder and delay them in the collection of their debts. No matter which party proposed that the conveyance should be made in the way it was done, the proposition being made on the one side and accepted on the other with the avowed purpose of keeping the

true transaction a secret to prevent its injuring the credit of Johnston, and to prevent the land from being attached by his creditors, involved both parties alike in the fraudulent purpose.    Johnston testifies that the proposition came first from Parker, one of the partners, and Parker testifies that it came first from Johnston, so that it is difficult to determine which one of the witnesses gives the true statement of the transaction. But I am satisfied from all the proof and circumstances surrounding the transaction, as shown from the proof, that it was understood between both parties that the deed was to be absolute upon its face, and that the defeasance was to be kept secret, and that this was for the purpose of avoiding prejudice to Johnston's credit, and further to prevent Johnston's interest in the land from being subject to attachment for his debts he was then owing; and for the reason that subsequent creditors could not be presumed to give credit upon the faith of his owning the lands, the title to which was absolutely in Farguson, as the same appeared of record.    The fact that he remained in possession the balance of the year in which the deed was made, could not affect the apparent title of Farguson; so that it is difficult to perceive how the title, being absolute in Farguson, could add anything to Johnston's credit, or that his subsequent creditors could be deceived and defrauded thereby.    But it is apparent that the making the deed absolute on its face, with the defeasance intended not to be recorded, but to be kept secret, was calculated to deceive existing creditors, and to hinder and delay them in the collection of their debts, and therefore fraudulent and void as to such existing debts.    It not satisfactorily appearing how much, if any, of the debts for which judgment was rendered in these attachment suits was contracted before the execution of this deed, the cause must be referred to a master, to take proof, and state the amount that was contracted prior to that time.    All others matters will be reserved until the coming in of that report.